UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                      CASE NO: 8:14-cr-464-T-36TGW

YVETTE LATISHA HORNE
_____/

## O R D E R

      This cause comes before the Court upon Defendant Yvette Latisha Horne's Motion to Suppress (Doc. 17).  The United States of America responded in opposition to the Motion (Doc. 21).  On March 19, 2015, the Court held an evidentiary hearing and oral argument on the motion. *See* Doc. 44.  The following witnesses testified at the hearing: Sergeant Steven Wannos ("Sgt. Wannos"); Corporal Gary Martinez ("Cpl. Martinez"); and Special Agent Bill Filides ("S.A. Filides").  Upon due consideration of the briefs, the evidence presented at the suppression hearing, and the oral argument, the Court will DENY Horne's Motion to Suppress.

## I.  FINDINGS OF FACT[1]

      On the day of August 1, 2014, Sgt. Wannos and Cpl. Martinez were working as part of the Anti-Crime Team of the City of Clearwater Police Department to identify gang-related activities within the North Greenwood community of Clearwater, Florida.  The North Greenwood community was of interest to law enforcement due, at least in part, to crime pattern reports identifying the area as high crime.

---

[1] The Court derives the facts from the testimony and exhibits presented at the suppression hearing.  The facts are undisputed unless otherwise noted.

That afternoon, Sgt. Wannos received a call[2] regarding individuals loitering in the area of Maple Street and some railroad tracks. As he approached the area, he did not observe anyone near the railroad tracks. Rather, he observed a black male—later identified as Elijah Horne—in the yard of a residence on Maple Street walking "at a rather fast pace" away from him towards the residence.

Sgt. Wannos pulled up to the residence, where Deputy Mitch Grissenger and an unnamed recruit had arrived just ahead of him.[3] There were no fences or anything else indicating that visitors were not welcome to freely approach the residence. Sgt. Wannos decided to approach the house and perform a "knock and talk." Sgt. Wannos then called for additional backup.

While Dep. Grissenger and the recruit stood by, Sgt. Wannos approached the front door of the residence and knocked. Defendant Yvette Horne opened the door. Sgt. Wannos immediately noticed the strong odor of fresh marijuana emanating from within the residence. Ms. Horne stepped out onto the area in front of the door and tried to shut the door, but Sgt. Wannos pushed the door open to prevent the destruction of any illegal drugs inside the residence.

Upon doing so, Sgt. Wannos observed a large man—later identified as Carlos Brye—sitting on a couch in the living room area about 15 feet away from the front door. Sgt. Wannos ordered all of the occupants of the residence to exit the residence and not re-enter. Ms. Horne, Mr. Horne, and Mr. Brye all exited the residence.

Sgt. Wannos then asked Ms. Horne for consent to search the residence. Ms. Horne declined. In response, Sgt. Wannos informed her that he thought he would be able to obtain a

---

[2] It is not clear who or which officer made the call, but Cpl. Martinez testified that he believes that S.A. Filides originated the call.
[3] The testimony does not establish why Dep. Grissenger and the recruit responded to the address that day. Sgt. Wannos testified that he did not know what Dep. Grissenger was doing before he got there.

search warrant for the residence.  Sgt. Wannos then called the narcotics unit within earshot of Ms. Horne.  Around this time, Cpl. Martinez arrived in response to Sgt. Wannos' request for additional backup.

After completing his call with the narcotics unit, Sgt. Wannos returned to Ms. Horne, who, by that time, was speaking with Cpl. Martinez.  Sgt. Wannos advised Ms. Horne that she had the opportunity to help herself out with regard to any potential charges, but that if he had to go forward with the search warrant, he wouldn't be able to provide her with any help based on cooperation. Ms. Horne then orally consented to the search, and notified him that all of the items in the house belonged to her.

After receiving verbal consent to the search, Cpl. Martinez, Dep. Grissenger, and the recruit entered the residence to conduct a protective sweep.  Upon entering the residence, Cpl. Martinez smelled marijuana.  Cpl. Martinez also discovered a large caliber size bullet in the closet of the bedroom on the south side of the residence.[4]  Ms. Horne then accompanied Cpl. Martinez into the residence and voluntarily showed him the marijuana, which was packaged in a clear plastic bag located inside the stove.

At that point, Cpl. Martinez asked Ms. Horne if she would provide written consent to search the property.  Ms. Horne agreed, and signed a written consent form while sitting on the couch inside the living room area.  After obtaining written consent, the officers searched the entire residence.  During the search of the residence, Sgt. Wannos found, among other things, several rounds of ammunition as well as a Norinco SKS rifle with a loaded magazine.

---

[4] Cpl. Martinez's testimony contradicts his report, which states that the bullet was found in the east side bedroom, *see* Def. Ex. 1.  For purposes of the Motion to Suppress, the Court relies on Cpl. Martinez's testimony and not Cpl. Martinez's report.

Ms. Horne now argues that all of the items discovered in her residence must be suppressed because they are the product of an illegal search.

## II.     DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people . . . against unreasonable searches and seizures." U.S. Const. Amend. IV.   To deter lawless police conduct, evidence seized in violation of the Fourth Amendment must be excluded. *See Terry v. Ohio*, 392 U.S. 1, 12 (1968). A warrantless search is *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks and citation omitted).

One such exception is the "knock and talk" exception. *See United States v. Taylor*, 458 F.3d 1201, 1205 (11th Cir. 2006).  Specifically, "[t]he Fourth Amendment . . . is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." *Id.* at 1204.  In other words, absent any indications to the contrary, a law enforcement officer may "walk up the steps and knock on the front door of any [person's] castle, with the honest intent of asking questions of the occupant thereof." *Id.* (quotation marks and citations omitted).

Here, the United States argues that the "knock and talk" conducted by Sgt. Wannos falls within the scope of this exception.  At the hearing, Sgt. Wannos suggested that he had two distinct reasons for conducting the "knock and talk." *First*, Sgt. Wannos testified that he wanted to identify the individual he observed in the front yard of Ms. Horne's residence and ask him about any gang-related activity.  *Second*, Sgt. Wannos testified that he had a particular interest in Ms. Horne's residence because he believed that the residence was involved in drug sales.  Specifically, Sgt. Wannos testified that he had been at the house two times prior to August 1 and had observed

individuals known to be drug dealers at the residence.  Sgt. Wannos further testified that about one or two days prior to August 1, Police Officer Jeffrey Newton had notified him of a tip from an unspecified source regarding ongoing drug sales in the residence.

Ms. Horne argues that the "knock and talk" was unconstitutional because Sgt. Wannos had no legitimate police purpose in conducting it.  Specifically, Ms. Horne asserts that the proffered purposes for the "knock and talk" are not credible.  *First*, Ms. Horne argues that there was no basis to believe that any loitering had occurred or was occurring on the afternoon of August 1.  *Second*, Ms. Horne argues that Sgt. Wannos' claim of investigating gang-related activity is not credible. She notes that Sgt. Wannos even conceded that Mr. Horne had not acted in a suspicious manner, that Mr. Horne was not a suspected gang member, and that no known gang members were ever observed in the area on the day of August 1.  She adds that the officers did not investigate any other residences in the area, such as the residence on the opposite side of her residence.  *Third*, Ms. Horne also suggests that Sgt. Wannos' suspicions as to drug activity at the residence are not credible.  She notes that Sgt. Wannos testified that, prior to August 1, he had never arrested anyone or obtained a search warrant on the basis of drug-related activity at the residence.  Ms. Horne also notes that Cpl. Martinez's report does not mention anything about suspected drug activity.  Ms. Horne contends that, in actuality, the "knock and talk" was subterfuge for conducting an unconstitutional rummaging expedition based on racial profiling.

After carefully considering the testimony and the parties' arguments, the Court finds that the "knock and talk" was constitutional.  *First*, the Court finds credible Sgt. Wannos' testimony that he conducted the "knock and talk" to investigate gang-related activity.  Although, as noted by Ms. Horne, there are a number of inconsistencies between Cpl. Martinez's report and Sgt. Wannos' testimony, it is undisputed that Sgt. Wannos received a call regarding potential loitering in the

vicinity of Ms. Horne's residence.  Further, although Sgt. Wannos testified that loitering would not have been an appropriate charge based on the time and location of the observed individuals, that does not undermine the legitimacy of conducting a simple investigation into what those observed individuals were doing.  Finally, the fact that Sgt. Wannos failed to directly observe any known gang members or suspicious activity in the area does not undermine his stated purpose of investigating gang-related activity.  The evidence is undisputed that Sgt. Wannos received a call regarding potential loitering near Ms. Horne's residence and that, upon arriving in that area, he observed Mr. Horne in the same area walking into Ms. Horne's residence.  The evidence, therefore, clearly supports Sgt. Wannos' decision to specifically approach Ms. Horne's residence to question Mr. Horne as an honest attempt to determine if any criminal activity had recently occurred in the area.

*Second*, the Court also finds credible Sgt. Wannos' testimony that he was seeking to investigate potential illegal drug activity that he believed may have occurred at Ms. Horne's residence.  The fact that Sgt. Wannos failed to obtain a search or arrest warrant prior to August 1 does not undermine this stated reason—indeed, if Sgt. Wannos had had probable cause, he would not have needed to conduct a "knock and talk."

Importantly, even if Sgt. Wannos lacked reasonable suspicion that anyone at the residence was involved in illegal drug or gang-related activities, that is not the test under Eleventh Circuit law—there need only be "legitimate police purposes" for conducting a "knock and talk." Investigating potential gang-related activity is certainly a legitimate police purpose for conducting a "knock and talk."  And, as the Eleventh Circuit has held, investigating potential illegal drug activity likewise constitutes a legitimate police purpose for conducting a "knock and talk."  *See*

*United States v. Williams*, 731 F.3d 1222, 1231 (11th Cir. 2013) (holding that conducting a "knock and talk" to investigate unspecified narcotics complaints was for "legitimate police purposes").

In sum, the Court concludes that two separately legitimate police purposes supported the "knock and talk."  Further, it is undisputed that the officers did not conduct the "knock and talk" in connection with a search of the premises, or otherwise approach the residence in a manner unlike that of a private citizen.  Nothing prevented Ms. Horne from exercising her right to ignore Sgt. Wannos. *See Illinois v. Wardlaw*, 528 U.S. 119, 125 (2000).  The "knock and talk" conducted by Sgt. Wannos on the afternoon of August 1, therefore, falls within the "knock and talk" exception to the Fourth Amendment.

The Court agrees with Ms. Horne that, had the "knock and talk" been conducted on the basis of illegitimate purposes, such as harassment or racial profiling, it would be unconstitutional.  The evidence, however, fails to establish any such illegitimate purposes.  There is no evidence that race was relevant to Sgt. Wannos' decision to conduct a "knock and talk" upon Ms. Horne's residence.  Rather, the testimony adduced at the hearing establishes only that race is relevant, at most, to identify specific individuals suspected of committing crimes.  There is likewise no evidence that the legitimate police purposes for conducting the "knock and talk" offered by Sgt. Wannos are merely pretexts for some secret desire to rummage through Ms. Horne's residence.

Ms. Horne seeks to suppress the evidence obtained from the subsequent search of her residence only on the basis that it is fruit of the allegedly poisonous "knock and talk."  Because the Court finds that the "knock and talk" was constitutional, the evidence obtained from Ms. Horne's residence on August 1, 2014 will not be suppressed.  It is hereby **ORDERED**:

1.      Defendant Yvette Latisha Horne's Motion to Suppress (Doc. 17) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on April 17, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any